UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE VEASLEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case number 4:03cv0031 DJS |
| ) | TCM |
| MIKE KEMNA, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The 28 U.S.C. § 2254 petition of Lawrence Veasley ("Petitioner"), a Missouri prisoner serving an aggregate thirty-year term of imprisonment, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for a review and a recommended disposition. See 28 U.S.C. § 636(b).

### Background

In exchange for the prosecutor dismissing charges of burglary, felonious restraint, and one count of armed criminal action, Petitioner informed the trial court that he was entering an Alford[1] plea to two counts of forcible rape, one count of sodomy, and one count of armed criminal action. (Resp. Ex. B [2] at 2-3.) The court then inquired into Petitioner's knowledge

---

[1]North Carolina v. Alford, 400 U.S. 25, 37 (1970).

[2]Several of the exhibits submitted by Respondent were also submitted by Petitioner. The exhibits submitted by Petitioner were not separately identified; thus, the undersigned will cite to Respondent's exhibits.

of the rights he was waiving by pleading guilty; specifically, the right to a jury trial; the "right to be faced by the person or persons that accuse you"; "the right to be confronted by your accuser"; the right to be presumed innocent unless found guilty by a reasonable doubt; the right to a unanimous verdict; and the right not to testify. (Id. at 3-4.) Petitioner affirmed that he understood his rights and wished to plead guilty. (Id. at 4.) Petitioner further affirmed that he was aware that if he did not plead guilty he would have the right at trial to have witnesses brought in to testify for him. (Id. at 4-5.)

Additionally, Petitioner understood the ranges of punishment, i.e., ten to thirty years or life imprisonment on the charges of forcible rape and sodomy and three years to life imprisonment on the armed criminal action charge. (Id. at 5.)

Asked what evidence the State had, the prosecutor repeated the victim's testimony at the preliminary hearing and explained that the victim had identified Petitioner's voice as that of her assailant and that there was a match on blood and DNA. (Id. at 12.) Asked by the court if he believed that he would be convicted if the case went to trial, Petitioner replied, "Oh, yeah." (Id.) The following exchange then occurred:

    The Court: Do you want to go to trial on this case?

    [Petitioner]: No.

    The Court: Do you want to plead guilty?

    [Petitioner]: Yeah.

    The Court: Anything else you want to say?

[Petitioner]: No.

(Id. at 13.)

Before the proceedings were adjourned, the prosecutor informed the court that Petitioner was aware that the State was going to recommend a thirty-year sentence on each count. (Id. at 14.) Trial counsel confirmed this, but added that Petitioner was going to ask for a lesser sentence. (Id.)

Six weeks later, after hearing from three character witnesses, the court asked Petitioner if there was any legal reason why judgment and sentence should not be pronounced. (Id. at 28.) Petitioner questioned the prosecutor's case against him. (Id.) The court asked if he wished to change his plea to not guilty. (Id.) He did not. (Id.) Petitioner informed the court that he was not satisfied with his attorney. (Id. at 29.) The court asked if he felt he should not have pled guilty. (Id.) Petitioner did not want to withdraw his plea and go to trial. (Id.) Petitioner having nothing else to say, the court sentenced him to concurrent thirty-year terms of imprisonment on each count. (Id. at 29-30.)

The court then inquired into Petitioner's dissatisfaction with his attorney. (Id. at 31.) Petitioner explained that his attorney had forgotten he was in jail and gave him bad advice on the DNA test. (Id. at 31.) Specifically, she told him that the DNA test showed that there was a 1 in 2,500 change that he was not the assailant; he opined that this statistic meant that there was "another one out there." (Id. at 32.) The court found no probable cause to believe

Petitioner had received ineffective assistance of counsel and remanded him to the custody of the Department of Corrections. (Id. at 32.)

Petitioner timely filed a motion for post-conviction relief. (Resp. Ex. C at 11-17.) The motion was amended by appointed counsel, and was denied following an evidentiary hearing at which Petitioner and his trial counsel testified. (Id. at 19-27, 31-33.) The motion court found, in relevant part, that Petitioner's claim that he was not aware that his attorney would have the right to cross-examine witnesses or that he would have the right to an attorney at trial was "simply not credible." (Id. at 33.) Moreover, "[Petitioner] offered no such testimony at the hearing on his postconviction motion." (Id.)

Petitioner appealed on one ground: his pleas were not voluntarily entered because the court failed to personally advise him of, and ensure he understood, his rights to cross-examine all witnesses against him and to the assistance of counsel at trial. (Resp. Ex. D at 9.)

In addition to quoting the exchange set forth above, the appellate court found as follows:

> At the plea hearing, the trial court asked movant if he understood that if he chose not to plead guilty, he would have "the right to be faced" by his accusers, to which movant responded affirmatively. The court further inquired: "And you realize by pleading guilty, you give up the right to be confronted by your accuser." Movant responded: "Yes, sir." The trial court later questioned: "Were you aware that if you were to plead not guilty, at your trial, you would have the right to have witnesses brought in to testify for you?" Movant replied: "Yes, sir." . . .
>
> Movant's trial counsel testified [at the evidentiary hearing] that, prior to entering the *Alford Plea*, she and movant "discussed all the evidence and all

- 4 -

his options" and that she "explained the options that were available to him." Later in the proceeding, the following colloquy occurred between the State and movant:

> [State]: In fact, the Judge tried to get you to not plead guilty and you insisted on pleading guilty; isn't that right?
> [Movant]: Well, if I had to keep [trial counsel], I had no choice but to plead guilty. [Trial counsel] told me point blank, 'If we take this case to trial, I am going to ask one question and that's going to be it.' So what am I supposed to do?
> . . .
> [State]: You're telling this Court here under oath that the defense attorney told you that if this case went to trial, that she was not going to cross-examine any witnesses except to ask one question?
> [Movant]: That's correct.

(Id. at 2, 4.) (All but first two alterations in original.)

The appellate court concluded that the motion court's adverse findings were not clearly erroneous. (Id. at 5.)

> . . . The trial court informed movant that, if he chose not to plead guilty, he would have the rights to be 'faced by [his] accusers, to be 'confronted by [his] accuser,' and to have 'witnesses brought in to testify for [him].' While the trial court's questioning did not exactly tract [Missouri Supreme Court] Rule 24.02(b)3, we find that its questioning complied with the requirements of the Rule that movant be advised of his right to cross-examine witnesses in the event of his pleading not guilty. . . . Further, the record shows that movant was well aware of his right to cross-examine witnesses in the event of his pleading not guilty, as is evidenced by his affirmative response to the State's question: "You're telling this Court here under oath that the defense attorney told you that if this case went to trial, that she was not going to *cross-examine* any witnesses except to ask one question?" [Emphasis added.] Movant has failed to demonstrate that he was prejudiced by the motion court's alleged failure to inform him that he would have had the right to cross-examine witnesses had he not pled guilty.
>
> Movant's argument that he was prejudiced by the trial court's failure to advise him of his right to an attorney at trial likewise fails. Movant's trial counsel testified that she discussed and explained to movant all of movant's

> trial options. Movant's statement at the evidentiary hearing that trial counsel had told him "at point blank, 'If we take this case to trial, I am going to ask one question and that's going to be it,'" clearly indicates that movant was aware that he would be represented by counsel at trial. . . .

(Id. at 5-6.) (First, fifth, sixth, and last alteration added.)

Petitioner now seeks federal habeas relief on nine grounds. Those nine grounds are: (1) the trial court denied him due process by not personally advising him of the various rights he was waiving by pleading guilty; (2) his guilty plea was unlawfully induced by his trial counsel's representations that he would not be sentenced to a term of imprisonment longer than fifteen years; (3) his guilty plea was not made intelligently, knowingly, or voluntarily because he was suffering from side effects caused by an anti-depressant; (4) his guilty plea lacked a factual basis because there was no showing that the crimes occurred in the county in which he was sentenced; (5) his trial counsel was ineffective for failing to file a motion to suppress the victim's voice identification; (6) the trial court abused its discretion by accepting his plea without (a) complying with Missouri and Federal criminal rules of procedure requiring that he be questioned about certain rights and (b) holding a competency hearing; (7) his post-conviction appellate counsel abandoned him by failing to consult with him and inform him about post-appeal motions; (8) his post-conviction appellate counsel was ineffective for abandoning on appeal four points raised in his post-conviction motion; and (9) the state court abused its discretion when failing to advise him of certain rights, failing to hold a competency hearing, and failing to sustain his post-conviction motion.

Respondent argues that the first ground is without merit; the second through fifth grounds are procedurally barred by Petitioner's failure to raise them in his post-conviction appeal; the sixth ground is procedurally barred by Petitioner's failure to raise it at all in his post-conviction proceedings; and the seventh through ninth grounds are not cognizable § 2254 claims. For the reasons set forth below, the undersigned agrees.

## Discussion

Ground One: Trial Court's Failure to Advise. This ground – the trial court failed to personally advise Petitioner of the various rights he was waiving by pleading guilty – was fairly presented to, and rejected by, the state courts.

Title 28 U.S.C. § 2254(d) mandates that a federal court "not grant habeas relief on a claim that was adjudicated on the merits in state court unless 'it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999) (quoting § 2254(d)(1)), or it "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" **Evans v. Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000) (quoting § 2254(d)(2)). See also **Weaver v. Bowersox**, 241 F.3d 1024, 1029 (8th Cir. 2001) ("Section 2254(d) distinguishes between two types of erroneous decisions – those of law and those of fact[.]").

The "contrary to" clause and the "unreasonable application" clause have independent meanings. **Williams v. Taylor**, 529 U.S. 362, 405 (2000). "[A] state court decision is 'contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent.'" **Lockyer v. Andrade**, 538 U.S. 63, 73 (2003) (quoting Williams, 529 U.S. at 405-06) (alterations added). "On the other hand, a run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." **Williams**, 529 U.S. at 406 (alteration added). Thus, a state court decision that correctly identifies the controlling legal authority and, applying that authority, rejects a prisoner's claim does not fit within the "contrary to" clause although it might be contrary to a federal court's conception of how that authority ought to be applied in that particular case. **Id.**

Such a state court decision can, however, fit within the "unreasonable application" clause. **Id.** at 407-08. "[W]hen a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." **Id.** at 409 (alterations added). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established

federal law was objectively unreasonable." **Id.** (alteration added). When making this inquiry, a federal habeas court should note that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." **Id.** at 410. "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." **Lockyer**, 538 U.S. at 75 (internal quotations omitted). Instead, "the relevant state court decision [must be] both wrong and unreasonable." **Colvin v. Taylor**, 324 F.3d 583, 587 (8th Cir. 2003) (alteration added).

And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'" **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long v. Humphrey, 184 F.3d 758, 761 (8th Cir. 1999)) (alterations in original). Additionally, "the [state courts'] 'summary nature' of the discussion of [a] federal constitutional question does not preclude application of the AEDPA standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (alterations added).

The Missouri courts' determination that Petitioner was adequately informed of the constitutional rights he was waiving by pleading guilty is neither contrary to, nor an unreasonable application of, clearly established Federal law.

"The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards." **Boykin v. Alabama**, 395 U.S. 238, 243 (1969). A waiver of three federal constitutional rights will not be presumed from a silent record, **id.**,

and "'must be made with 'sufficient awareness of the relevant circumstances and likely consequences,'" **United States v. Martinez-Cruz**, 186 F.3d 1102, 1104 (8th Cir. 1999) (quoting Brady v. United States, 397 U.S. 742, 748 (1970)).  These three rights are: "the privilege against compulsory self-incrimination"; the "right to trial by jury"; and "the right to confront one's accusers."  **Boykin**, 395 U.S. at 243.  Accord **Martinez-Cruz**, 186 F.3d at 1104; **Stacey v. Solem**, 801 F.2d 1048, 1050 (8th Cir. 1986).

Although the record may not be silent as to the waiver of these three rights, "the Supreme Court has refused to require a specific on-the-record litany of such waiver before a trial court may validly accept a plea of guilty.  Rather the validity of a plea depends on 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." **Blalock v. Lockhart**, 977 F.2d 1255, 1256 (8th Cir. 1992).  See also **Stacey**, 801 F.2d at 1050 ("*Boykin* does not require the express articulation and waiver of these three rights at the time the plea is entered.") (interim quotations omitted).  Moreover, "[t]he Eighth Circuit has stated, 'the failure of the state court to make a record affirmatively showing the voluntariness of a plea of guilty in accordance with the precepts of *Boykin* does not automatically vacate the plea.  The state may still show, by way of post-conviction proceedings, that the plea was voluntarily made.'"  **Id.** (quoting Griffith v. Wyrick, 527 F.2d 109, 112 (8th Cir. 1975)).

The trial court specifically inquired of Petitioner if he understood he was waiving his right not to testify and his right to a jury trial, the first two of the three federal constitutional

rights. He affirmed, under oath, that he understood his rights and wished to plead guilty. The trial court also inquired of Petitioner if he understood he was waiving his right to be confronted *by* his accuser and the right to have witnesses brought in to testify for him. He understood he was waiving these rights. Petitioner contends, however, that he did not understood that he was waiving his right to *confront his accuser* and not merely to be confronted *by* his accuser. This contention is belied by Petitioner's subsequent testimony at the post-conviction hearing that his attorney told him she was not going to cross-examine witnesses if the case went to trial.

Petitioner also claims that he was not informed of his right at trial to be represented by an attorney. This claim is refuted by his state court testimony that trial counsel told him she would ask only one question of witnesses if the case went to trial. Additionally, at his sentencing hearing Petitioner was twice offered the chance to change his plea to not guilty and to proceed to trial. His rejection of the opportunity to proceed to trial underscores the voluntary nature of his plea of guilty.

<u>Grounds Two through Six: Procedural Default.</u> These grounds either were not raised in Petitioner's post-conviction motion or in the appeal from the denial of that motion.

Title 28 U.S.C. § 2254(b)(1)(A) and the Supreme Court bar the granting of habeas corpus relief unless it appears that the state prisoner has exhausted available state court remedies. See **Baldwin v. Reese**, 541 U.S. 27, 27 (2004); **Gray v. Netherland**, 518 U.S. 152, 161 (1996); **Coleman v. Thompson**, 501 U.S. 722, 730 (1991).

> 'Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Darr v. Burford, 339 U.S. 200, 204 (1950)).'

**Id.** at 731 (quoting Rose v. Lundy, 455 U.S. 509, 518 (1982)). See also **Weeks v. Bowersox**, 119 F.3d 1342, 1349-50 (8th Cir. 1997) ("Requiring the exhaustion of state remedies both allows the states to correct any possible constitutional violations without unnecessary intrusion by the federal courts and allows the state courts to create a factual record should the matter proceed to federal court.").

"[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." **Coleman**, 501 U.S. at 732 (alteration added).

In order to preclude habeas petitioners from avoiding the exhaustion requirement and to "ensure[] that the States' interest in correcting their own mistakes is respected in all federal habeas cases," **id.** (alteration added), the state procedural bar that gives rise to a habeas petitioner having technically satisfied the exhaustion requirement provides an independent and adequate state-law ground for the petitioner's conviction, **id.** at 730; **Gray**, 518 U.S. at 162. This independent and adequate state law ground prevents federal habeas review of a

defaulted claim "unless [the petitioner] can show cause and prejudice for the default, or actual innocence."[3] **Clemons v. Luebbers**, 381 F.3d 744, 750 (8th Cir. 2004) (alteration added).

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Ervin v. Delo**, 194 F.3d 908, 915 (8th Cir. 1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)) (alteration in original). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). "At a minimum, however, [Petitioner] must show that 'something *external* to [him], something that cannot fairly be attributed to him,' caused the procedural default." **Id.** (quoting Coleman, 501 U.S. at 753) (first alteration added; second in original). The ineffective assistance of counsel may be external if it can be attributed to the state based on the existence of a constitutional right. **Coleman**, 501 U.S. at 53-54. There is no constitutional right to the effective assistance of post-conviction counsel. **Pennsylvania v. Finley**, 481 U.S. 551, 559 (1987). Consequently, the alleged ineffectiveness of state post-conviction counsel cannot supply the required cause to excuse a procedural default. **Clay**

---

[3]The merits of a procedurally defaulted claim may be reached if actual innocence is established. See **Cox v. Burger**, 398 F.3d 1025, 1031 (8th Cir. 2005). To do so, a petitioner "must come forward with new reliable evidence that was not available at trial[.]" **Nance v. Norris**, 392 F.3d 284, 291 (8th Cir. 2004) (alteration added). Although Petitioner asserts he is innocent, this assertion is supported only by his own statement and not by any new reliable evidence unavailable until now.

**v. Bowersox**, 367 F.3d 993, 1005 (8th Cir. 2004); **Taylor v. Bowersox**, 329 F.3d 963, 971 n.13 (8th Cir. 2003); **Burns v. Gammon**, 173 F.3d 1089, 1092 (8th Cir. 1999).

In Missouri, a Rule 24.035 motion is the exclusive remedy to challenge a guilty plea on federal constitutional grounds. **Weeks**, 119 F.3d at 1347; **Duvall v. Purkett**, 15 F.3d 745, 746 (8th Cir. 1994). The failure to renew on appeal a claim presented in a post-conviction motion causes a procedural default of the omitted claim. See **Anderson v. Groose**, 106 F.3d 242, 245 (8th Cir. 1997); **Lowe-Bey v. Groose**, 28 F.3d 816, 818 (8th Cir. 1994); **Reese v. Delo**, 94 F.3d 1177, 1181 (8th Cir. 1996).

It is undisputed that Petitioner did not raise claims two through five, inclusive, in the appeal from the denial of his post-conviction motion and did not raise his sixth ground[4] at all in the post-conviction proceedings. Petitioner contends that he has sufficient cause for his default because his post-conviction counsel abandoned him. Petitioner was not abandoned by post-conviction counsel. Counsel raised four grounds in the amended post-conviction motion and only one ground on appeal. Whether this elimination was ineffective assistance or not, it was not abandonment. See **White v. Bowersox** 206 F.3d 776, 779 (8th Cir. 2000) (noting that in Missouri abandonment of post-conviction counsel occurs when counsel completely fails to perform statutory duties). Petitioner's rephrasing of counsel's

---

[4]The sixth ground includes two claims: first, that the trial court abused its discretion when not questioning him about certain rights and, second, that the trial court abused its discretion when not holding a competency hearing. Insofar as the first claim is a rephrasing of the first ground, it has been presented and is without merit for the reasons set forth above. The second claim clearly has never been presented to the state courts, including in Petitioner's pro se post-conviction motion.

decision as abandonment does not save his grounds from being procedurally barred. See **Sweet v. Delo**, 125 F.3d 1144, 1151 (8th Cir. 1997) (ineffective assistance of post-conviction counsel cannot serve as cause for a procedural default).

Grounds Seven through Nine: Non-Cognizable § 2254 Claims. In his seventh and eighth grounds for § 2254 relief, Petitioner alleges that he is entitled to such a remedy because his post-conviction counsel abandoned him. His abandonment allegation does not give rise to an independent constitutional claim. In **Mack v. Caspari**, 92 F.3d 637, 640 (8th Cir. 1996), the Eighth Circuit Court of Appeals held that a habeas petitioner's claim that he had been abandoned by post-conviction counsel when counsel failed to file an amended motion was not a cognizable § 2254 claim. In his ninth, and final, ground, Petitioner contends that the state court abused its discretion when denying his post-conviction motion.[5] An infirmity in a post-conviction proceeding, e.g., the post-conviction court's adverse decision, is not a cognizable § 2254 claim. See **Gee v. Groose**, 110 F.3d 1346, 1351-52 (8th Cir. 1997); **Jolly v. Gammon**, 28 F.3d 51, 54 (8th Cir. 1994).

## **Conclusion**

For the foregoing reasons, Petitioner's first claim is without merit, his second through sixth claims are procedurally barred, and his last three are not cognizable § 2254 claims.

Accordingly,

---

[5]Petitioner also alleges in his ninth ground that the state court abused its discretion when failing to advise him of certain rights and when failing to hold a competency hearing. These allegations are discussed above in the context of grounds one and six.

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Lawrence Veasley be **DENIED** without further proceedings.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact. See **Griffini v. Mitchell**, 31 F.3d 690, 692 (8th Cir. 1994).

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of January, 2006.